# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  vs.  ALFREDO PEREZ-SAAVEDRA,  Defendant. | No. 10-CR-1005-LRR  **ORDER** |

_____

## *I. INTRODUCTION*

The matters before the court are Defendant Alfredo Perez-Saaverdra's Objections (docket no. 27) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 21) and the government's Objections (docket no. 29) to the Report and Recommendation.

## *II. RELEVANT PROCEDURAL BACKGROUND*

On March 18, 2010, a grand jury returned a one-count Indictment against Defendant. Count 1 charges Defendant with Fraud or Misuse of Documents, in violation of 18 U.S.C. § 1546(a). On April 20, 2010, Defendant filed a Motion to Suppress ("Motion") (docket no. 9).

On April 22, 2010, a grand jury returned a Superseding Indictment against Defendant. Count 1 charges Defendant with Fraud or Misuse of Documents, in violation of 18 U.S.C. § 1546(a). Count 2 charges Defendant with Unlawful Possession of a Firearm By a Person Illegally or Unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5)(A).

On April 28, 2010, the government filed its Resistance (docket no. 16) to the Motion. On that same day, Defendant filed an Amended Motion to Suppress ("Amended

Motion") (docket no. 17). In the Amended Motion, Defendant amended an incorrect date present in the Motion.

On April 29, 2010, Judge Scoles held a hearing ("Hearing") on the Amended Motion. Assistant United States Attorney Richard Murphy represented the government. Attorney Rockne Cole represented Defendant who was personally present. On May 7, 2010, Judge Scoles filed the Report and Recommendation, which recommends that the undersigned deny the Amended Motion.

On May 21, 2010, a grand jury returned a Second Superseding Indictment against Defendant. Count 1 charges Defendant with Fraud or Misuse of Documents, in violation of 18 U.S.C. § 1546(a). Count 2 charges Defendant with Unlawful Possession of a Firearm By a Person Illegally or Unlawfully in the United States, 18 U.S.C. § 922(g)(5)(A). The Second Superseding Indictment also contains a Forfeiture Allegation.

Also on May 21, 2010, Defendant filed his Objections to the Report and Recommendation. Defendant requests a hearing and oral argument on the Objections. The court finds that a hearing and oral argument are unnecessary. The Objections are fully submitted and ready for decision.

On May 24, 2010, the government filed its Objections (docket no. 29) to the Report and Recommendation.

### III. GOVERNMENT'S OBJECTIONS

The government objects to two of Judge Scoles's findings of fact. The government's Objections are untimely. *See* Report and Recommendation at 19 ("the parties are advised, pursuant to § 28 U.S.C. § 636(B)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court."). Pursuant to the Report and Recommendation and § 28 U.S.C. § 636(B)(1), the government's Objections were due on May 21, 2010. The government did not file its Objections until May 24, 2010. A party's

"failure to file any objections waived his right to de novo review by the district court of any portion of the report and recommendation of the magistrate judge as well as his right to appeal from the findings of fact therein." *United States v. Rodriguez*, 484 F.3d 1006, 1010-11 (8th Cir. 2007). Accordingly, the court overrules the government's Objections.

### IV. STANDARD OF REVIEW FOR DEFENDANT'S OBJECTIONS

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Crim. P. 59(b)(3) (stating "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed R. Civ. P. 59(b)(3) (stating a district judge "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions"). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the undersigned reviews Defendant's objections de novo.

### V. ANALYSIS

Defendant lodges four objections to Judge Scoles's conclusions of law. First, Defendant objects to Judge Scoles's finding that Defendant gave law enforcement officers consent to enter his home. Second, Defendant objects to Judge Scoles's finding that Defendant was not in custody at the time that Immigration and Customs Enforcement ("ICE") Agent Cantrell questioned him. Third, Defendant objects to Judge Scoles's finding that Defendant voluntarily consented to a search of his residence for firearms. Fourth, Defendant objects to Judge Scoles's finding that Defendant voluntarily

to a search of his residence for identification documents. The court addresses these objections in turn.

## A. Consent to Enter the Residence

Defendant objects to Judge Scoles's finding that Defendant voluntarily consented to the law enforcement officers' entry into his residence. "Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." *Donovan v. Dewey*, 452 U.S. 594, 599 n.6 (1981). However, a simple "knock and talk" does not implicate the Fourth Amendment. *United States v. Hamilton*, 591 F.3d 1017, 1023 (8th Cir. 2010). The Eighth Circuit Court of Appeals characterizes a "knock and talk" as a scenario in which "an individual voluntarily opens the door of his or her place of residence in response to a simple knock[.]" *United States v. Peters*, 912 F.2d 208, 210 (8th Cir. 1990). A knock and talk can become the subject of Fourth Amendment protection if law enforcement officers "assert their authority, refuse to leave, or otherwise make the people inside feel they cannot refuse to open up." *United States v. Spotted Elk*, 548 F.3d 641, 655 (8th Cir. 2008).

In a thorough analysis, Judge Scoles applied this law to the facts of the instant case and concluded that the law enforcement officers did not compel or coerce Defendant to allow entry into his residence. Defendant objects to this conclusion and asserts that "Judge Scoles entirely discounted the coercive circumstances under which the officers entered." Objections at 5. The undersigned agrees with Judge Scoles's analysis. The elements typically present in coercive "knock and talks" are simply not present in the instant case. *See, e.g.*, *United States v. Lakoskey*, 462 F.3d 965, 974 (8th Cir. 2006) (holding warrantless entry into the defendant's home violated the Fourth Amendment when an officer failed to leave after repeated requests to do so); *United States v. Connor*, 948 F. Supp 821, 826-53 (N.D. Iowa 1996) (Bennett, J.) (holding warrantless entry into the defendant's motel room violated the Fourth Amendment when officers "pounded" on the

4

door and shouted "open up"); *United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986) (holding that the defendant did not impliedly consent to officers' entry into his home when the defendant "went to the door to open it after the FBI agent ordered him to do so, stepped back, and placed his hands on his head"). Accordingly, this objection is overruled.

### *B. Custody Finding*

Defendant objects to Judge Scoles's finding that he was not in custody at the time that law enforcement entered his residence. "Law enforcement officials must administer *Miranda* warnings before interrogating individuals in their custody." *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). Judge Scoles discussed the law relating to custody, including the six "indicia of custody" identified by the Eighth Circuit Court of Appeals, which are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

The undersigned agrees with Judge Scoles's application of these six factors. Defendant was not in custody at the time he consented to the officers' entry. Defendant's objection merely offers conjecture as to what the officers would have done had Defendant not consented to their entry. What the officers would have done in a different scenario cannot be known with certainty and is not part of the custody analysis. Accordingly,

5

Defendant's objection to Judge Scoles's finding that he was not in custody when the officers entered his home is overruled.

## C. Search for Firearms

Defendant objects to Judge Scoles's finding that he voluntarily consented to the law enforcement officers' search of his residence for firearms. In order to determine whether an individual voluntarily consents to a search, the court looks to the totality of the circumstances. *Donovan v. Dewey*, 452 U.S. 594, 598 (1981) "The government is required to show voluntary consent by a preponderance of the evidence." *Id.*

Consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990). To determine voluntariness, courts consider both the characteristics of the person consenting and the environment in which the person gave consent. *Id.* at 380-81.

The following characteristics of the person consenting are considered:

> (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

*Id.* at 381 (internal citations omitted).

Courts ask the following questions about the environment in which law enforcement received consent:

> (1) was [the person consenting] detained and questioned for a long or short time, (2) was [he] threatened, physically intimidated, or punished by the police; (3) [did he rely] upon promises or misrepresentations made by the police; (4) was [he] in custody or under arrest when the consent was given; (5) was [he] in a public or a secluded place; or (6) [did he] either object[] to the search or [stand] by silently while the search occurred.

6

*Id*.

The undersigned agrees with Judge Scoles's thorough and thoughtful analysis of these factors and with his conclusion that Defendant freely and voluntarily consented to the search for firearms. Although not lodged as a formal objection to Judge Scoles's findings of fact, Defendant argues that the fact that he was handcuffed militates in favor of a involuntary consent finding. Defendant states that he "was immediately handcuffed after admitting to being in the country illegally." Objections at 8. The record does not support this assertion. Agent Cantrell testified that Defendant "was handcuffed after [the officers] had gained consent to search the residence for firearms." Transcript ("Tr.") (docket no. 36), at 58. Because the officers handcuffed Defendant after he consented to the search, the fact that Defendant was handcuffed cannot factor into the voluntariness analysis. Accordingly, the undersigned overrules the objection.

### D. *Search for Documents*

Defendant objects to Judge Scoles's finding that Defendant and Defendant's girlfriend, Nancy Winter, consented to a search of the residence for documents. The facts surrounding the consent to search for documents differ from the facts related to the consent to search for firearms. After the officers found the firearm, they placed Defendant under arrest and gave him *Miranda* warnings. Defendant invoked his right to remain silent. The officers asked Winter for consent to search the residence for documents. Agent Cantrell testified that Defendant then spontaneously said that his documents were in the basement. Winter also consented to the search.

Defendant states that he "credibly testified that he never authorized agents to look for the box containing his ID documents." Objections at 9. Both Agent Cantrell and Defendant's testimony contradicts this assertion. Agent Cantrell testified that the government's statement of facts in its Resistance is accurate. The Resistance states "Agent Cantrell asked Winter whether [D]efendant had identity documents used for work in the

7

house and, if so, if she knew where the documents were located." Resistance at 4. "While Winter and Cantrell were speaking with each other, [D]efendant spontaneously interjected that his documents were located in a shoe box in the basement." *Id.* Defendant testified that he consented to the search, because "[he] didn't want later on for them to find these things and then to come back and say that [he] was lying." Tr. at 119. Defendant's testimony that he felt he "didn't have a choice" is relevant to the consent analysis, but ultimately unconvincing. *Id.* The undersigned finds that Defendant's consent was not the product of coercion or otherwise involuntary.

Agent Cantrell also testified that Winter independently consented to the search. The undersigned agrees with Judge Scoles's conclusion that Winter freely and voluntarily consented to the search. The analysis with respect to this consent is largely the same as the analysis concerning Defendant's consent to search for firearms.

Defendant does not mention the fact that Winter consented in his objection. Even if the undersigned were to find that Defendant did not voluntarily consent to the search for documents, the officers still conducted the search pursuant to Winter's consent. Accordingly, the objection is overruled.

## *VI. CONCLUSION*

In light of the foregoing, the court **ORDERS:**

(1) Defendant's Objections (docket no. 27) are **OVERRULED**;

(2) The government's Objections (docket no. 29) are **OVERRULED**;

(3) The Report and Recommendation (docket no. 21) is **ADOPTED**;

(4) The Amended Motion (docket no. 17) is **DENIED**.

(5) The Clerk of Court is **DIRECTED** to satisfy the Motions at docket nos. 9 and 17.

**IT IS SO ORDERED**.

**DATED** this 15th day of June, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA